# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
August 18, 2003 Session

## JAMES C. WILKERSON, ET AL. v. PFC GLOBAL GROUP, INC, ET AL.

### Appeal from the Circuit Court for Blount County
No. L-13286    W. Dale Young, Judge

### FILED OCTOBER 23, 2003

### No. E2003-00362-COA-R3-CV

On May 3, 2002, James and Judith Wilkerson ("Plaintiffs") filed this lawsuit against PFC Global Group, Inc. ("PFC") claiming PFC had defaulted on a Promissory Note. Plaintiffs also sued Don and Brenda Dorris who had personally guaranteed PFC's debt to Plaintiffs. All three Defendants were served with process on May 16, 2002, and their attorneys entered an appearance on Defendants' behalf the following day. Plaintiffs' counsel informed defense counsel that Plaintiffs would move for a default judgment if an answer was not filed by September 6, 2002. When no answer was filed by that date, Plaintiffs moved for and were granted a default judgment. After hearing testimony from Plaintiff James Wilkerson regarding the amount due under the various contracts, the Trial Court granted Plaintiffs a judgment against each Defendant in the total amount of $1,492,353.52, plus an additional $15,000 in attorney fees. Thereafter, Defendants filed a motion to have the default judgment set aside under Tenn. R. Civ. P. 60. After a hearing, the Trial Court determined Defendants were not entitled to relief from the default judgment. We affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the
### Circuit Court Affirmed; Case Remanded.

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., J., and WILLIAM H. INMAN, SR. J., joined.

C. Allen Ragle, Knoxville, Tennessee, for the Appellants PFC Global Group, Inc., Leslie Don Dorris, and Brenda L. Dorris.

David R. Duggan, Maryville, Tennessee, for the Appellees James C. Wilkerson and Judith A. Wilkerson.

## OPINION

## Background

Plaintiffs owned all of the stock of Serviceway Motor Freight, Inc. ("Serviceway"), a Tennessee corporation with its principal place of business in Blount County. Plaintiffs sold all of their stock in Serviceway to PFC for $2,287,900. PFC agreed to pay $787,900 at closing and to finance the remaining $1,500,000 through Plaintiffs. The sale was consummated on January 9, 2001, when Plaintiffs and PFC entered into a Purchase and Sale Agreement. PFC also executed a Promissory Note for the $1.5 million being financed. The principal shareholders of PFC were defendants Leslie Don Dorris ("Don Dorris") and Brenda L. Dorris. On the date of the sale, Don and Brenda Dorris each executed a separate Guaranty which personally guaranteed payment of the $1.5 million debt being financed by PFC.

On May 3, 2002, Plaintiffs filed a complaint in the Circuit Court for Blount County claiming PFC had defaulted on the Promissory Note. Plaintiffs also sued Don and Brenda Dorris on their personal guarantees. All three Defendants were served with process on May 16, 2002. The next day, attorneys Edward Cox ("Cox") and Thomas Leveille ("Leveille") of the Knoxville law firm Hagood, Tarpy & Cox, P.L.L.C., filed a Notice of Appearance on behalf of all three Defendants.

On May 28, 2002, attorney Leveille sent a letter to Plaintiffs' counsel stating, among other things, that an answer and counterclaim were being prepared on Defendants' behalf. Leveille also set forth Defendants' position on several matters and invited discussion on these issues. Leveille ended the letter by stating: "If we do not hear from you, we will proceed with the filing of our Answer and Counter-Complaint."

At some point in time after Plaintiffs' stock in Serviceway was purchased by PFC, Serviceway filed for bankruptcy under Chapter 11. The record on appeal does not establish exactly when this filing occurred. Serviceway was represented in the bankruptcy proceeding by attorney Lynn Tarpy ("Tarpy"), also from Hagood, Tarpy & Cox, P.L.L.C. Thus, two attorneys from Hagood, Tarpy & Cox, P.L.L.C., were representing Defendants in the present state court lawsuit, and a third attorney from that same law firm was representing Serviceway in the bankruptcy proceeding.

On August 19, 2002, Plaintiffs' counsel wrote a letter to Tarpy enclosing a notice of appearance which was to be filed in the Bankruptcy Court proceeding. With regard to the state court lawsuit, the letter stated:

> I am writing to you concerning the pending state court action. As is evident on the face of the pleadings, and as I noted at the creditors meeting, the debtor [Serviceway] is not a party defendant in this state court action. I am simply trying to seek a judgment against PFC Global Group, Inc. and the individual guarantors. Accordingly, I intend to proceed with this case. I would ask you to please file your

Answer in behalf of the defendants by September 6, or I will move
for a default judgment.

When no answer was filed in the state court lawsuit, Plaintiffs did exactly what they said they would do and filed a Motion for Default Judgment on September 19, 2002. Plaintiffs moved for the entry of a default judgment against all three Defendants in the amount of $1,439,354.46, plus interest and attorney fees. Plaintiffs maintained they were entitled to a default judgment because no response to the complaint had been filed and over four months had lapsed since Defendants were served with process. Plaintiffs' counsel filed an affidavit in support of the motion. Cox and Leveille were served with a copy of the Motion for Default Judgment as well as a Notice informing them that this motion was set for hearing on October 18, 2002. In a letter dated September 18th to attorneys Cox and Leveille enclosing the motion and accompanying notice, Plaintiffs' counsel stated: "[I]t will be my position, although I have not yet addressed this matter in the Motion and will address it only if necessary, that your firm cannot represent these Defendants in the state court litigation given the representation by your firm of Serviceway … in its bankruptcy action."

Plaintiffs' Motion for Default Judgment was heard by the Trial Court on October 18, the date shown in the Notice served on defense counsel. At the time of the hearing, Defendants still had not answered or otherwise responded to the complaint. Neither attorneys Cox and Leveille nor Defendants were present at the hearing. At the hearing, Plaintiff James Wilkerson testified under oath regarding the amount he claimed was owed under the contracts, although no transcript of his testimony is contained in the record. After the hearing and in reliance on Wilkerson's unopposed testimony, the Trial Court entered a Judgment which provides as follows:

This cause having come on to be heard the 18th day of October, 2002 upon Plaintiffs' Motion for Default Judgment, supporting Affidavit of counsel for the Plaintiffs, Notice to the Defendants, and testimony in open court, and it appearing unto the Court that all parties were given notice of these proceedings and were properly before the Court, and that the Motion is well-taken and should be granted, and the Court further finding:

1.      That the Defendants, and each of them, were served with process in this cause on May 16, 2002;

2.      That the Defendants, and each of them, have failed to file a responsive pleading or otherwise defend against the Complaint filed against them in this cause within the time allowed by the Tennessee Rules of Civil Procedure;

3.      That Defendant, PFC Global Group, Inc., is eight (8) months in arrears in its payments under the promissory note at issue dated January 9, 2001, and that after giving all just credits due and

owing to said Defendant for any payments made, the balance under said promissory note due and owing is $1,492,353.42 including interest accrued through October 18, 2002;

4. Defendants, Leslie Don Dorris and Brenda L. Dorris, each executed a personal guarantee of said indebtedness by Guaranties dates January 9, 2001; and

5. That the instruments executed by Defendants and at issue in this cause provide for attorney fees to be awarded in the event of default and legal action to collect the debt.…

Based on these findings, the Trial Court entered judgment against Defendants, "and each of them" in the amount of $1,492,353.42, plus an additional $15,000 in attorney fees. The Judgment was entered by the Trial Court on October 21, 2002, and mailed to all counsel of record.

Almost one month later, on November 18, 2002, Defendants were represented by new attorneys who entered an appearance and filed a Motion to Set Aside Judgment or to Alter or Amend the Judgment. In this motion, Defendants claimed Serviceway, a subsidiary of PFC, had "a case pending under Chapter 11 of the Bankruptcy Code … and it was through this bankruptcy that the debt Plaintiffs allege is owed was to be paid." Defendants claimed Don Dorris was present in Bankruptcy Court on October 17, 2002, attending a hearing on whether Serviceway's Chapter 11 filing for reorganization would be converted to a Chapter 7 liquidation, something which would ruin Defendants financially. It was further argued that Don and Brenda Dorris had been devoting all of their "time and energies" to preparing for the October 17 Bankruptcy Court hearing and, "[c]onsequently, they were not focused upon the hearing on October 18, 2002 in this Court." Defendants further stated that Plaintiff James Wilkerson and his attorney were present in Bankruptcy Court on October 17, but said nothing to Don Dorris or his attorney about the state court hearing scheduled the next day. According to Defendants, all of the foregoing amounted to understandable and reasonable inadvertence and excusable neglect authorizing them to relief from the judgment. While Defendants admitted they were indebted to Plaintiffs, they denied it was for the amount contained in the judgment that had been entered against them.

Plaintiffs responded to the motion to set aside the default judgment and argued why they believed Defendants were not entitled to any relief from the judgment. In this response, Plaintiffs' counsel related, among other things, the following discussion he had with Tarpy which took place after the Motion for Default had been filed:

7. After service of said Motion … Tarpy called counsel for Plaintiffs and stated, first, that it was his opinion that he could obtain injunctive relief from the Bankruptcy Court staying the State Court proceedings; and, second, he inquired about the possibility of agreement to continue the hearing scheduled for October 18, 2002 to

a later date, in part predicated upon a hearing which, at that time, was scheduled for October 17, 2002, at 11:00 o'clock A.M., in the United States Bankruptcy Court, on a Motion to Convert the Debtor's bankruptcy to a Chapter 7.

Counsel for Plaintiffs responded to Mr. Tarpy that he had discussed this matter thoroughly with John Walker, co-counsel with the undersigned in the bankruptcy proceeding, and that the undersigned was confident that the United States Bankruptcy Court would not stay the State Court proceedings, and further stating his intention to proceed with the hearing on October 18, 2002. With respect to the latter, specifically, counsel for Plaintiffs stated that he saw no reason to discuss a reset of the hearing in the State Court beyond October 18 given that the hearing date already followed the bankruptcy hearing on October 17.

8. No Answer was forthcoming, and no proceedings were filed in the United States Bankruptcy Court to attempt to stay this Court's hearing on October 18, 2002.

9. Counsel for Plaintiffs never heard from Mr. Tarpy, or his firm, again.

On December 5, 2002, approximately six and one-half months after being served with process, Defendants filed their answer to the complaint. In their answer, Defendants claimed that after the sale was consummated, they discovered certain "affairs were not as they understood them to be at the time" of the sale. More specifically, Defendants claim Mr. Wilkerson wrote $64,000 in checks out of Serviceway's account which were made payable to himself or a related entity, thereby improperly depleting Serviceway's bank account. Defendants also claim Plaintiffs represented to them that Serviceway had $250,000 in "good" receivables, but in fact there was only $227,000 in such receivables. Defendants also claimed the vehicles included in the purchased had not been subject to regular maintenance and several trailers were five years older than Plaintiffs had represented. Based on these allegations, Defendants asserted affirmative defenses of waiver, estoppel, frustration of purpose, fraud, and breach of contract.

Along with their answer, Defendants filed the affidavit of Don Dorris who attested to the accuracy of the facts and defenses set forth in the answer. Don Dorris also claimed neither he nor his wife received a notice from Plaintiffs' counsel informing them of the "proceedings herein." Don Dorris then stated:

9. Prior to the filing of the Motion for Default herein, Serviceway filed for protection under Chapter 11 of the Bankruptcy Code.

10.     It is my understanding that because of the filing of the Case under Chapter 11 by Mr. Tarpy, the attorneys who filed a Notice of Appearance on behalf of me and the other defendants in this case would not be able to represent us because of a conflict of interest.

11.     At the meeting of the creditors in the Serviceway bankruptcy case, … [counsel for Plaintiffs] asked me if I believed I was in default under the purchase agreement and/or note, and I replied that I did not believe I was in default.…

Defendants' answer and Don Dorris' affidavit were filed the day before the hearing on the their motion to set aside the default judgment. After hearing counsels' arguments and reviewing the facts as set forth above, the Trial Court discussed the various grounds for relief from a judgment under Tenn. R. Civ. P. 60 then concluded as follows:

While both lawyers have made thorough and good arguments to this court for and against the motion, I haven't heard anything that fits within the purview of the rule. I haven't heard any reason why this whole case wasn't responded to on a timely basis other than [it] just didn't get looked after. That's not a good reason to set aside a default judgment when everybody has had ample opportunity to be part and parcel of the whole process.… [P]laintiffs have rights just as defendants have rights, and they have a right to have things resolved and their lawsuits complete. In the court's opinion the defendants were given every opportunity to do that and for whatever their reason failed and refused to do so. And so for all of those reasons the court respectfully overrules the motion to set aside the judgment ….

Defendants appeal raising two issues. First, Defendants claim the Trial Court erred when it refused to set aside the default judgment because the default judgment was obtained through Defendants' mistake, inadvertence and/or excusable neglect. Second, Defendant's claim the Trial Court abused its discretion by failing to conduct a hearing upon a Writ of Inquiry to determine the appropriate amount of damages due Plaintiffs, if any.

### Discussion

The factual findings of the Trial Court are accorded a presumption of correctness, and we will not overturn those factual findings unless the evidence preponderates against them. *See* Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). With respect to legal issues, our review is conducted "under a pure *de novo* standard of review, according no deference to the conclusions of law made by the lower courts." *Southern Constructors, Inc. v. Loudon County Bd. Of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001). The Trial Court's decision to deny relief under

Rule 60.02 is reviewed under an abuse of discretion standard. *See, e.g., Day v. Day*, 931 S.W.2d 936, 939 (Tenn. Ct. App. 1996).

The entry of a default judgment is governed by Tenn. R. Civ. P. 55. The portions of this rule which are pertinent to the present case provide:

> **55.01. Entry. –** When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, judgment by default may be entered as follows:
>
> The party entitled to a judgment by default shall apply to the court. All parties against whom a default judgment is sought shall be served with a written notice of the application for judgment at least five days before the hearing on the application, regardless of whether the party has made an appearance in the action.… If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter the court may conduct such hearings or order such references as it deems necessary and proper and shall accord a right of trial by jury to the parties when and as required by any statute.
>
> **55.02. Setting Aside Default. –** For good cause shown the court may set aside a judgment by default in accordance with Rule 60.02.

Defendants do not contend the Trial Court erred when it entered the default judgment. Rather, they contend the Trial Court erred when it refused to set aside the default judgment pursuant to Tenn. R. Civ. P. 60.02. Although not entirely clear from the record, it appears Defendants claim they are entitled to relief under Rules 60.02(1) and (5), which provide as follows:

> On motion and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; … or (5) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1) and (2) not more than one year after the judgment, order or proceeding was entered or taken.

Under Rule 60 "the burden is on the movant to set forth, in a motion or petition and supporting affidavits, facts explaining why the movant was justified in failing to avoid the mistake,

inadvertence, surprise or neglect." *Tennessee Dep't of Human Services v. Barbee*, 689 S.W.2d 863, 866 (Tenn. 1985)(quoting *Tennessee State Bank v. Lay*, 609 S.W.2d 525 (Tenn. Ct. App. 1980)). Rule 60.02 is not for use by a party merely because he is dissatisfied with the results of the case. *Toney v. Mueller Co.*, 810 S.W.2d 145, 146 (Tenn. 1991); *NCNB National Bank of North Carolina v. Thrailkill*, 856 S.W.2d 150, 153 (Tenn. Ct. App. 1993). The principle of finality is firmly embedded in the procedural rules and, therefore, Rule 60.02 is an escape valve that should not be easily opened. *Toney v. Mueller Co.*, 810 S.W.2d 145, 146 (Tenn. 1991); *NCNB National Bank of North Carolina v. Thrailkill*, 856 S.W.2d 150, 153 (Tenn. Ct. App. 1993). "[M]ere negligence or inattention of a party is no ground for vacating a judgment against him. Carelessness is not synonymous with excusable neglect." *Food Lion, Inc. v. Washington County Beer Bd.*, 700 S.W.2d 893, 896 (Tenn. 1985)(quoting 46 Am. Jur. 2d *Judgments* § 718 (1969)); *NCNB National Bank of North Carolina v. Thrailkill*, 856 S.W.2d 150, 153 (Tenn. Ct. App. 1993).

Notwithstanding the foregoing, Tennessee courts have construed Rule 60.02 more liberally when it comes to granting relief from a default judgment. As observed by our Supreme Court, "[C]ourts often apply a different standard when faced with a Rule 60 motion in regard to a default judgment. Unlike … [cases] in which relief from a final judgment after a hearing was deemed to be extraordinary under Rule 60, Rule 60 is construed with liberality to afford relief from a default judgment." *Tennessee Dep't of Human Services v. Barbee*, 689 S.W.2d 863, 867 (Tenn. 1985). Factors to consider in determining whether to grant relief from a default judgment under Rule 60 include whether the default was willful, whether the defendant has a meritorious defense, and whether any prejudice would result to the non-defaulting party if relief from the judgment is granted. *Id*. at 866. If there is reasonable doubt as to whether to set aside a default judgment upon proper application, a trial court should exercise its discretion in favor of granting relief from the judgment. *See Keck v. Nationwide Systems, Inc.,* 499 S.W.2d 266, 267 (Tenn. Ct. App. 1973).

Defendants rely on several cases where the reasons supporting a party's lack of attendance were considered sufficient for granting relied under Rule 60. For example, in *Barbee* the Court concluded the trial court did not err when it set aside a default judgment which was entered after the defendant and his attorney failed to appear at trial. In reaching this conclusion, the Court observed that the record reflected "why the defendant failed to appear at the January 23, 1980, trial. This case was set for trial in open court before defense counsel entered an appearance for the defendant. No order setting the case for trial was entered. After an answer was filed, the clerk's office failed to notify defense counsel that this case has been set for trial." *Id*. at 867. *See also Nelson v. Simpson*, 826 S.W.2d 483 (Tenn. Ct. App. 1991)(Reversing the trial court's refusal to set aside a default judgment when, *inter alia*, the trial court heard and granted the plaintiff's motion for default judgment before either the defendant or his insurance company knew it had been filed and after counsel for plaintiff agreed with the insurance company to give thirty days notice before moving for a default judgment.).

Plaintiffs argue this case involves nothing more than mere inattention by defense counsel which is not a proper basis for granting relief from the judgment. Plaintiffs rely on *Food Lion, Inc. v. Washington County Beer Board*, 700 S.W.2d 893 (Tenn. 1985), where the Tennessee

Supreme Court held that an attorney being too busy was "no ground" for relief under Rule 60. *Id.* at 896. Citing 46 Am. Jur. 2d 874-75 *Judgments* § 718 (1969) and *Dudley v. Stiles*, 142 Mont. 566, 386 P.2d 342 (1963), the *Food Lion* Court stated:

> It has been declared that the mere negligence or inattention of a party is no ground for vacating a judgment against him. Carelessness is not synonymous with excusable neglect. Mere forgetfulness of a party to an action is not a sufficient ground for vacating or setting aside a judgment by default. Parties are not justified in neglecting their cases merely because of the stress or importance of their own private business and such neglect is ordinarily not excusable.

*Food Lion*, 700 S.W.2d at 896. The Court further concluded that an attorney being uncertain how to proceed also failed to satisfy the Rule 60 requirements, and if "this Court were to hold that ignorance of the law is a proper ground for relief under Rule 60.02, Tennessee Rules of Civil Procedure, it is hard to conceive how any judgment could be safe from assault on that ground." *Id*. Similarly, in *Barber & McMurry, Inc. v. Top-Flite Development Corp.*, 720 S.W.2d 469 (Tenn. Ct. App. 1986), this Court concluded that failure of a party's attorney to attend trial was not a sufficient basis to set aside a judgment when the lack of attendance "was due to the counsel's occupation with other professional or business matters." *Id*. at 471 (quoting 46 Am. Jur. 2d *Judgments* § 728 at p. 884).

On appeal, Defendants claim that the conflict of interest created by Tarpy representing Serviceway in the Bankruptcy Court proceeding prevented Cox and Leveille from further representing Defendants, thereby leaving Defendants "without counsel to appear on their behalf in defense of this lawsuit." While it is not at all certain to this Court from the record before it that such a conflict actually existed, we will proceed with our review as if such a conflict did exist. The record as it exists contains no affidavit from any of the attorneys from Hagood, Tarpy & Cox, P.L.L.C., or anyone else explaining why any conflict of interest which was created necessarily excluded the attorneys in the state court action from continuing their representation, as opposed to excluding Tarpy from his representation in the bankruptcy proceeding.

Another glaring omission is any lack of evidence as to when Tarpy, Cox or Leveille actually discovered the conflict. We do know that the conflict of interest was discussed in the September 18, 2002, letter from Plaintiffs' counsel to Cox and Leveille. Thus, Cox and Leveille were aware of the conflict no later than the day on which they received this letter, although they certainly could have known of the conflict well before this time. The hearing on the motion for default was conducted a full month after the letter was mailed. The record contains no explanation whatsoever as to why nothing was done during this time to inform the Trial Court of the existence of a conflict and Defendants' need to obtain new counsel prior to filing an answer. Nothing was done. Cox and Leveille still were Defendants' attorneys at the time of the hearing on Plaintiffs' motion for default. Therefore, Defendants were not without counsel up to and through the hearing

on the motion for default. For these reasons, we reject Defendants' argument that the conflict of interest formed a sufficient basis for them to be granted relief under Rule 60.[1]

Defendants also argue that neither Don Dorris nor Brenda Dorris knew that a motion for a default judgment had been filed against them, and they were so preoccupied with the bankruptcy case that they were not focused on the state court action, even though the amount of damages sought against them personally was roughly $1.5 million. Defendants maintain that neither the Trial Court nor Plaintiffs' counsel let them know that a motion for default had been filed or that a hearing on such a motion had been set. To the extent this argument can be taken to mean that Defendants should have been provided individual notice of the motion for default, that obligation obviously fell on their attorneys. No fault can be attributed to Plaintiffs' counsel who ethically was prohibited from having any direct communication of this nature with Defendants who were represented by counsel. The record contains no proof establishing that the attorneys who entered their appearance on Defendants' behalf did not receive proper notice as required under Tenn. R. Civ. P. 55. In fact, the record establishes just the opposite.

The only reasonable conclusion to be drawn from the evidence presented to the Trial Court and this Court is that Defendants and/or their attorneys, for whatever reason, simply did not do what needed to be done and file an answer or otherwise respond to the complaint. As observed in *Food Lion*, *supra*, "mere negligence or inattention of a party" is not a proper basis for relief under Rule 60. *Food Lion*, 700 S.W.2d at 896. If we were to grant relief under these circumstances, then every default judgment could be set aside because, by definition, something did not get done that needed to be done or a default judgment would not have been entered in the first place. *See Food Lion*, 700 S.W.2d at 896 (If "this Court were to hold that ignorance of the law is a proper ground for relief under Rule 60.02, Tennessee Rules of Civil Procedure, it is hard to conceive how any judgment could be safe from assault on that ground."). Defendants have offered nothing to support their claim that they did not answer or otherwise defend this lawsuit because of "mistake, inadvertence, surprise, or excusable neglect" as contemplated by Rule 60, even with a liberal interpretation. We conclude the Trial Court did not abuse its discretion when it refused to grant Defendants relief from the default judgment pursuant to Rule 60.02(1).

Rule 60.02(5) authorizes relief from a judgment for "any other reason justifying relief from the operation of the judgment." Despite its broad language, Rule 60.02(5) is construed narrowly. *Federated Insurance Co. v. Lethcoe*, 18 S.W.3d 621, 625 (Tenn. 2000); *NCNB National Bank of North Carolina v. Thrailkill*, 856 S.W.2d 150, 154 (Tenn. Ct. App. 1993); *Steioff v. Steioff*, 833 S.W.2d 94, 97 (Tenn. Ct. App. 1992). The standards of Rule 60.02(5) are even more demanding than those applicable to the other grounds for Rule 60.02 relief. *NCNB National Bank of North Carolina v. Thrailkill*, 856 S.W.2d 150, 154 (Tenn. Ct. App. 1993); *Duncan v. Duncan*, 789 S.W.2d 557, 564 (Tenn. Ct. App. 1990)(citing *Tenn. Dept. of Human Services v. Barbee*, 689 S.W.2d 863,

_____

[1] While in the present case we have assumed, without deciding, that a conflict of interest actually existed, our holding should not be construed to mean a conflict of interest never can provide a basis for relief from a judgment under Rule 60.

866 (Tenn. 1985)). For the same reasons we conclude Defendants were not entitled to relief under Rule 60.02(2), we likewise conclude they are not entitled to relief under Rule 60.02(5), and the Trial Court did not abuse its discretion when it refused to grant Defendants relief under this Rule.

Defendants' final issue is their claim that the Trial Court erred by not conducting a hearing upon a Writ of Inquiry to determine the appropriate amount of Plaintiffs' damages. Defendants argue no "such hearing on damages was held" and a judgment was entered against Defendants without their being afforded an opportunity "to obtain an accounting of the claim, or to explain or deny same." Initially, it goes without saying that had Defendants and their attorneys shown up at the hearing, they would have been entitled to cross examine Mr. Wilkerson. As set forth previously, Rule 55.01 provides that a trial court may conduct a hearing as it deems "necessary and proper" in order to enable it to determine the amount of damages. We believe the Trial Court did just that. A hearing was conducted after the default judgment was granted and the Trial Court heard sworn testimony from plaintiff James Wilkerson. Moreover, without a transcript of the hearing, we must conclusively presume the evidence justified the amount of the judgment. *See Cable v. Lowe's of Johnson City, Inc.*, No. E2000-01075-COA-R3-CV, 2001 Tenn. App. LEXIS 169 (Tenn. Ct. App. Mar. 15, 2001), *no appl. perm. appeal filed*, wherein this Court affirmed entry of a default judgment for $50,000, the full amount requested by the plaintiff in her complaint. In so doing, we stated:

> As to the third issue relative to the damages awarded, we have neither a transcript nor a statement of evidence in the record concerning the hearing conducted to assess damages. We are, therefore, unable to reach the merits of this issue, but must conclusively presume that the evidence presented justified the judgment of the Trial Court. *See In re Rockwell v. Arthur*, 673 S.W.2d 512 (Tenn. Ct. App. 1983).

*Cable*, 2001 Tenn. App. LEXIS 169, at * 7.

In the present case, we believe the Trial Court conducted a hearing "as it deem[ed] necessary and proper" in order to "determine the amount of damages" to which Plaintiffs were entitled. *See* Tenn. R. Civ. P. 55.01. Since we must presume there was sufficient evidence to support the amount of the verdict, the Trial Court is affirmed on this issue.

## Conclusion

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for further proceedings as are necessary, if any, consistent with this Opinion, and for collection

of the costs below. The costs on appeal are assessed against the Appellants PFC Global Group, Inc., Leslie Don Dorris, and Brenda L. Dorris, and their surety.

_____

D. MICHAEL SWINEY, JUDGE